Precision Pine & Timber v. United States Appeal 2007-5085 Mr. Harrington, good afternoon to you. Welcome to the Court. Please proceed. May it please the Court. The trial court erred in ruling that interest on the default damages owed by precision pine was triggered by the filing of a status report in this litigation in April 2005. The trial court failed to give effect to both the plain language of precision pine's contracts and the statutory provisions of the Debt Collection Act. I take it that the trial judge found the 2001 bill for collection to be a nullity, to be invalid because it was issued based on using a prohibited methodology. Your Honor, let's go back to what actually happened and what the trial judge found. The trial judge found that there was an incorrect formula used in assessing default damages. Not just incorrect, prohibited by the contract. Well, Your Honor, I think prohibited is probably a misnomer. There were two formulas in CT 9.4. And that is the provision in the contract that states how the Forest Service will calculate damages in the event of a termination. But one was unavailable here because the wood hadn't been sold. That's correct. So therefore the method, when the method was used anyway, it was a method excluded under the undisputed facts by the express terms of the relevant contract provision. Therefore, it was an illegal method. No, Your Honor. Contrary to the contract. Your Honor, it was not an illegal method. It was a misapplication of CT 9.4 by the contract office. If it's contrary to a contract term, I don't think you can say it's not unlawful. Well, Your Honor, let's go back. There were nine contracts. And there is a distinction to be worth making among the nine contracts in addition to this point. One contract, the Hutch Boone Dock contract, was in fact calculated, the default damage was in fact calculated using the no resale formula. And what I'll do is refer to the two formulas shorthand in CT 9.4. One is the resale formula, that being the formula used where the default timber has been resold by the Forest Service. Maybe you should have won on that and it seems like your remedy was to file a Rule 60 motion with the trial judge to have him correct that apparently inadvertent error. But it doesn't help us at all on the other, I guess it's eight contracts, where the CEO inexplicably used a totally unavailable method of calculating damage. Your Honor, the CEO used one of the two methods of calculation. Yeah, one that was plainly unavailable because the wood had not been sold. The contracting officers for eight of the nine contracts used the wrong one of two available formulas. We don't contend that that was not a mistake, but But you contend that the bill for collection was nevertheless an operative valid instrument under the statute, whereas Judge Miller said no, it's a nullity because of the way it was arrived at. Your Honor, the contracting officers in this case asserted government claims under the Contract Disputes Act. Judge Miller found that the contracting officers had asserted government claims for purposes of the Contract Disputes Act and that was the very jurisdictional basis on which he was allowed to entertain further questions in this matter. So the bills of collection may have been miscalculated. They were not a nullity. They were, in fact, valid government claims asserted pursuant to the Contract Disputes Act. Well, that's your position, but that didn't seem to be his ruling. You're challenging his ruling, so it seems to me you have to persuade us that he made a legal error in treating the notification as what I'm calling a nullity. If he didn't make a legal error, then why are you bringing the appeal? He did make an error, Your Honor. He made an error. Well, it's not a factual error, so maybe you'll agree with me that it would have to be a legal error. He erred in construing the contract. He erred in his application of the statute, the Debt Collection Act. So, yes, we agree that it's a legal error before this Court. Well, you have to show us why we should conclude that it's a legal error. I don't see anything faulty about his reasoning. Your Honor, the question is whether or not a good faith misapplication of a contract provision... I don't think good faith has anything to do with this case at all. If the action was unlawful, the document embodying the action is not entitled to be treated as a valid document. So then the first valid document was the April 2005 notification, which the trial judge accepted. The document was not unlawful, Your Honor. What the contract provides for is it provides for a termination for default. We have a termination for default here in January 2001. It's not disputed. Of course they defaulted. They didn't have a listed surety anymore. That's clear as a bell and not contested. Exactly, Your Honor. And once you have a termination for default, you can properly, at that point, assess a government claim for default damages. If you do it lawfully, which this CO did not do. These COs, Your Honor, did lawfully assert government claims for default damages, Your  Now, the decision documents is the Forest Service contract notice of the asserted government claim for default damages against precision pining in February and March 2001. The decision documents, they state, this documents the contracting officer's decision regarding a claim under the Contract Disputes Act by the United States against precision pining timber, and it states the specific amount that is claimed and states the contract on which the claim is based. So you're basically saying no court is permitted to look beyond the face of that document, and because on its face it's valid, it states a dollar amount, it's signed by an authorized official, that's the end of the issue. Well, if you look at the Debt Collection Act, Your Honor, that's exactly what the Act provides for. Let's take a silly example. There's a valid government contract. There's a valid default. And the contracting officer says, well, I'm going to figure out how much to bill the contractor for by using the dartboard in my office. And whatever number comes up, that's what I'm going to bill for. Is that okay? I mean, does interest run from the date that that bill is sent out? Well, Your Honor, the date for the trigger is the date that a valid government claim is asserted. If he has asserted a valid government claim, and I don't want to suggest that that is getting into a truly a bad faith sort of assessment, not a mistaken application of a contract. But there is a line somewhere, though. Your Honor, the date for the trigger of interest is the date the claim is asserted. Well, what if the claim that it's asserted, I mean, what if the true value of the claim is $100, and by using my dartboard method, you claim $100 million, and the contractor says, I'm not paying that, I don't owe anybody $100 million. Nonetheless, when the actual amount is determined, interest accrues from the date of the $100 million bill? That would be the date on which the interest would accrue. No, the interest wouldn't run on $100 million. No, no, that wasn't my question. That's not the question. No, my question was, though, the accrual date of what was actually owed. The accrual date of what was actually owed would run from the date the contracting officer asserted a claim under the Contracting States Act. Even if the way that the claim was asserted was completely ludicrous, as it is in my hypothetical. Even if the contracting officer miscalculated the claim, got it wrong. No, no, no, miscalculation is not what we're talking about. I mean, Judge Miller said he wasn't talking about miscalculation. I mean, the question is, if the method that's used is not a method that's permitted, I think we're all kind of getting at the same point, and I'm just trying to exaggerate it to see if you think that there's a line somewhere. I mean, is there a point at which the method is so ultra-varied that there's no obligation that attaches? Your Honor, we have a valid default. If the contracting officer asserts a government claim for default damages, under the Contract Disputes Act, let's go back to the actual terms of the statute. The Debt Collection Act defines debt as, quote, any amount of funds that has been determined by an appropriate official of the federal government to be owed to the United States. Now, that's the definition of debt. And the Act states that interest will run, interest in penalty charges on a delinquent debt, accrued from the date of the notice of the amount due as first mail to the debtor. That is what triggers interest. We all agree on that. There's no dispute about that. The language, though, that caught my eye in looking at the statute is, I think if you go back, I think it's the date that the contracting officer determines the debt is owed, right? Now, Judge Fogel's example is a wonderful hypothetical in which I think we can all agree that's not a determination of a debt. Well, if he's literally throwing something at the court, he's making an effort to determine it. Well, and either because he makes no effort or because he doesn't yet have the information necessary to make what the statute would fairly be read to mean a determination. So isn't the statute really saying you have to have whatever the contract provides as the course of conduct that leads you to be in a position to make a determination, even if you make a mistake with respect to the determination, nonetheless, you have to be in a position to make something we would all agree is a determination of the debt before you can start the interest running. And if that's so, then it seems to me this case looks an awful lot like Judge Fogel's example, because here it was just an estimate that was thrown out in the beginning before the contractually required preconditions were established to make a determination. The problem here is not that a determination could not have been made on that debt. But it wasn't made. I mean, it was an estimate. Well, what— But based on not having the information, at least in the—with respect to the 8th contract. What the contracting officer did was to use the wrong formula. He used the resale formula where they used the resale formula, and they should have used the no resale formula. There's no question that applying the no resale formula at that time was appropriate and proper and could have been done. That's what was done on the Hutch Boondock contract. And if you look at that contract, there was no change in the amount of damages that were assessed. The same amount was assessed in the contracting officer's decision and the subsequent status report. The same thing should have been done using that formula under the other contracts. The contracting officers—and there were different contracting officers. The contracting officers should have used that formula because no resale had occurred. Now, the issue of estimate is a little bit of a misnomer because all of these are estimates of damages. The starting point for both formulas is a Forest Service appraisal of the value of the remaining timber. And there are necessarily estimates that are embodied in both formulas. So it would have been an estimate under the no resale formula where the estimated value of the remaining timber would have been used. to reduce the amount of default damages. Your Honor, as I see I'm going into my rebuttal time, I'd be happy to entertain any further questions. But if not, I'll go ahead and sit down and preserve the balance of my time. All right. Mr. Kirkin. May I please the Court? Contrary to what the government has just told you, the central issue in this case is simply whether interest and penalty can begin to accrue when the government does not determine the principal amount of damages owed as provided for by the contracts, but instead seeks to recover what it's termed estimated damages, something which is not provided for anywhere in the contracts. The Court below correctly found that because the Forest Service's timber contract specified two, but only two means of determining damages, the government's attempt to create a wholly independent and separate means of determining damages was invalid. Those two means provided for under the contract are contained in Contract Clause CT 9.4. Well, he agrees they used, at least as to all but one of the contracts, the wrong formula. He agrees with that. But he says it doesn't matter. Judge Miller said it did matter. We're trying to figure out does it matter or not. Of course it matters. And the only way that a debt becomes owing or due under the terms of the contract is if those damages are calculated pursuant to CT 9.4. And that is found in two clauses, CT 4.41 and CT 9.3, which deals with the calculation of damages upon a breach. And that clause could not be more clear. It indicates the contracting officers shall determine the amount of damages pursuant to 9.4. That simply did not happen here until May of 2005. If I might back up a little bit with respect to the Hutch Boondock contract where the damages didn't change, it's quite clear from the contracting officer's decision, however, that she was seeking the recovery of estimated damages, again, something not provided for under CT 9.4. And that's found at the joint appendix 118. And I believe the chief judge has thought that perhaps a motion for reconsideration in the court below might have addressed that issue as well. But even apart from that point, it is clear that an impermissible estimate of damage is what's being sought in that contract. So that should give this court no pause. Do you understand the government to be implicitly arguing that a document such as we have here, bill for collection, can't be dissected by the trial judge? Somehow it's beyond his power to see whether it's a valid document or not? I heard that question asked. I'm not sure I heard an answer to it. I'm just trying to understand what the government's position is, so I'm asking what you think the government's position is. I think it is a necessary component of their argument that somehow if it's valid from day one, regardless of what methodology is used to determine it, that somehow the court is not permitted to look beyond or even question how the contracting officer arrived at that number. I guess another way to put it is that he wants us to read the statute as if it said, bill of collection, whether or not valid, whether or not done pursuant to the contract or in conformance with the contract, starts the running of interest. And the statute doesn't say that? The statute doesn't say it. The contract clauses specifically provide a means for determining it. None of the cases that anybody has cited in this appeal provide for that result. Now, typically, if you have just a—suppose your contract is silent with respect to the calculation of damages and you have a breach, the contracting officer sends a notice that day that there is a breach and he says, and here are your damages. And it may be an estimate, but that's going to start the interest running, correct? That's quite possible, Your Honor, and I hasten to add that's essentially what happened in this case. On April of 2005, the government submitted its revised— really, its calculations pursuant to the contract for the first time. Subsequently, they revised those calculations. Twice. Twice. Correct. But the important point is that interest, Judge Miller found, that interest began to run from the date of that attempt, simple attempt to comply with the contract. Okay. Now, the difference, I take it, between that case, which would be a case in which there is not a special contractual provision designating how damages are to be calculated, and you might have a second hypothetical case in which the contract provides that damages will not be assessed until and then only based on three events which occur post-breach. And in that situation, I take it, you're saying that contract says to the government you may not send a bill out on the day—you could send the bill, but you're not going to get interest until all three of those events have occurred by virtue of the language of the contract. In other words, it's a contractual waiver, in effect, of the earlier interest running that you could get if there were no such contractual provision. That's basically what this case is about as you see it, is it not? Well, that's correct, Your Honor, and I believe the salient point here with respect to the contract and the clauses at issue, where the government opts for the resale option, there is a provision under the clause, CT 9.4, subsection 4, in which the government does get interest from the time of the termination up until the time of the resale. So the government is protected. Okay, now that's where it starts to get complicated, is because there wasn't simply one provision in the contract about how you go about getting damages. There were different ways of going about calculating damages. Why isn't the government entitled to make its estimate with respect to any one of those options, even though it hadn't exercised the option until later? Well, it didn't pursue either option. It had two options, but it pursued neither. I don't know if this is a bad case, if they estimated on day one what the damages were for the no resale. That's not this case, if that would be valid. The point here is they did have two means of calculating damages, very clear, very step-by-step approaches. They decided to do neither and basically chose some things from column A, some things from column B, resulted in a significantly higher estimate of damages and sought to recover penalty and interest on that significantly higher amount. But what was it that prevented them from making, without regard to whether they chose the wrong things from the wrong columns, what was it that prevented them from making a no resale damages assessment immediately? They had written you a letter and they said, this is going the no resale route. I'm not sure what you mean by immediately, Your Honor. Shortly after the breach. There is a requirement that they reappraise the timber pursuant to Forest Service internal methodology. And that conceivably would take some time and effort. So that would be one thing that would slow down the immediate issuance of a bill. Anything else that would be given that course of, a proposed course of, a possible course of action that would be a condition precedent to their? I don't believe so, Your Honor. OK, so it would be the appraisal? Right. Anything further? I'm happy to address any other questions the court might have with respect to the application of the Debt Collection Act or. I don't hear any further questions. All right, very good. Thank you, sir. Mr. Harrington, you have a couple minutes of rebuttal. Yes, Your Honor. For starters, I'd like to add that there's nothing in the Debt Collection Act or the Contract Disputes Act that says that if the bill that is submitted by the contracting officer, this is the appropriate official of the government to submit the bill. There's no dispute about that. That if there's some error, and here the error is a mistaken application of a contract provision, that the bill is invalid. The contracting officer is the appropriate person to submit this sort of bill. And there's nothing unusual or remarkable here in our position that the contracting officer's default determination was valid, that damages were then owed, that's the contracts provide that, and that interest is paid only on the amount actually found to be determined to be due, the actual valid amount. It doesn't matter what they do. By definition, it's harmless error. No matter how arbitrary their conduct is, it's harmless error because in the end the correct amount is going to be determined. Because there was a valid opportunity to assess default damages. They could do it under the no resale formula. And there's no question that they could. In fact, one contracting officer did do that. But they didn't do that with regard to the other eight contracts. The others, it was a mistake, a good faith misapplication of the contract provision to use the wrong formula. That sort of mistake does not affect the running, the approval date. It almost sounds like you're saying that any mistake is okay as long as there's an opportunity to get the right amount at the end of the day. I think that's essentially right, Your Honor. If there's some sort of good faith misapplication, miscalculation of the initial billed amount, that starts the running of interest. Both times you've answered my question, you've said good faith. I'm just asking you, and this is not only an academic but also practical question, is there any limit to what the contracting officers can do? How far afield can they go? Your Honor, let's assume there's no basis for assessing damages at that particular time. I'm assuming you've got a basis for damages. It's a bridge. Yeah. This is all about the number. Are they completely unfettered, or is there some place where they're outside what they're permitted to do? There are plenty of places they're outside what they're permitted to do in calculating damages. There could be a contract provision that doesn't allow damages to be assessed at a certain point. I believe Judge Bryson raised that possibility. That's not the case here. But if damages were assessed at that time when there was no contractual authority... No, but I'm assuming it's the right time. There's a valid contract. They just go completely nuts as to the number. Then in that case, Your Honor, interest will approve from the date that it's assessed. That's what the debt collection act says. It doesn't matter how irresponsible or inaccurate the bill is. Then the principle on which interest is assessed will be smaller because it will be corrected. There are two possibilities. Let's go to the situation where a contractor gets a bill. It's a ridiculous bill. There are two possibilities, essentially, for what the contractor can do. They can say, we're going to pay the bill and then assert a claim under the Contract Disputes Act for the amount that you're going to pay. After we emerge from bankruptcy. Your Honor, this is why this is only one of the options. But if they do that, then they, from the date they submit their claim, which would be right at the time they submit the payment, they get interest on what they get back, on any overpayment. So if there's a mistake, they get interest on the amount they get back. That's under Section 611 of the Contract Disputes Act. The other option is to not pay the bill and allow the government to effectively assert and prosecute its claim to collect. If they choose not to pay the bill, then they run the risk of having to pay interest and penalty charges under the Contract Disputes Act. That sounds like a Hobson's choice to me. They haven't done anything wrong, and either way the government wins. Well, there's a third option, Your Honor. They say, we only owe $100 as a result of this. We're going to pay you the amount that's undisputed, the amount that's right. The contracting officer got it wrong. We'll pay you the amount we know we actually owe. Then, if they're right, they owe no interest, they pay the right amount. That's the third alternative. And there's no interest or penalty that runs them. That's not what happened here. It's not what happened in the Westchester case. It's not what happened in a number of other cases. It seems to me that the risk, if you should win this case, there's a risk that an aggressive agency would tell all of its contracting officers, no matter what the provisions in the contract, send on the day of breach, on the day you determine breach, send a bill. Make an estimate. Try to make it a good faith estimate, but send the bill, because if nothing else, at least it'll start interest running on whatever turned out to be the damages, without regard to what the contract provides as to how the process of ascertaining damages might be. Is there something you could say to make me feel that that's not a risk? Yes. I think that there is necessarily implicit in what our position is that the contracting officer can, in fact, calculate damages at the time that it was done. Here there was the no resale formula under the contracts. That could and should have been used. We're straightforward about that. That's the one of the two formulas that should have been used. That could have been used as soon as the appraisal of timber was completed. So you're not suggesting that the rule you're asking us to adopt would apply to a contracting officer making an estimate of damages on the day of breach, even though the contracting officer may not have the information that the contract requires him to have at the time he actually makes a final determination? No, I'm not suggesting that, Your Honor. If the contract, for instance, requires that an appraisal be done, as in this case, before damages are assessed, and the appraisals were all done before the damages were assessed, if that's required, then that has to be done before the contracting officer can assess damages. That's right there in the contract, and that's the appropriate way to go about it. That's a question of the timing. If the contract has something implicit in it that requires the contracting officer to delay assessing... Well, that's what this case is all about, I thought. I mean, the question is a question of timing. Has the contracting officer done something prior to the point at which he was entitled to assess damages, right? Well, here the case is not that the contracting officer did something prior to the point at which they were entitled to do it. They were entitled to assess damages at the time they did it under the no resale formula. They simply used an incorrect... They messed up the calculation, is what it boiled down to, by using an incorrect formula. It wasn't that they were not entitled under the contract to assess the fault damages at that time. They were. There was an amount that was actually owing. There was an amount that was actually owing. There's no question that there was an amount that was actually owing. And to prevent the approval of interest or default damages, Precision Pine had open to it any of the three options that I discussed. They chose the option we're not going to pay anything, which when the court found that there were in fact default damages owed, they owed principal on the judicially established debt. I may still not understand your case, but if I understood what you just said in answer to Judge Fogel and Judge Bryson, you're saying there's some kind of violations of the contract damage calculation terms that would invalidate the bill for collection, but there are other kinds of violations of the contract terms that don't invalidate the bill for collection. How can we tell which is which? Very simply, Your Honor. The question is, let's assume for the sake of argument that the contract says you cannot assess default damages for 90 days after the termination for default. If you're assessing default damages before that, it's not something that's contemplated before by the contract. What does that mean? If it's explicitly prohibited, that invalidates the bill for collection, but if it's only a violation because you don't do something that you're required to do by the contract term, that's not an invalidation? Your Honor, there's nothing that was done that was required to be done. There was nothing that the contracting officers were required to do that was not done here. I'm sure there was. They were required to follow the only available formula, and they didn't. You say they had at least two choices. They sort of wrote down the wrong choice, but had they written down the other choice, they'd have been fine. That's right. The mistake was one of choosing the wrong category as opposed to jumping the gun. Exactly. And that's what happened with the Hutch Boondock contract. They used the correct formula in that one. The damages were calculated correctly. They never changed, and to this day, to the cent, Judge Miller affirmed the amount. They should have used that formula. They could have used that formula, and they should have used that formula with respect to the other contracts at that time. And that was the mistake that happened. It was a mistake of mechanics, not a mistake of legal authority to be able to assess default damages at that time. All right, thank you both. You can take the case under advisory. All rise. We are adjourned at 2 p.m.